

FILED

April 2, 2018

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

11:58 A.M.

# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT MEMPHIS

| | | |
|---|---|---|
| LAWANDA HALEY, | ) | Docket No. 2017-08-0676 |
| **Employee,** | ) | |
| v. | ) | |
| FEDEX EXPRESS, | ) | State File No. 98075-2016 |
| **Employer,** | ) | |
| And | ) | |
| SEDGWICK CMS, | ) | Judge Amber E. Luttrell |
| **Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL AND TEMPORARY DISABILITY BENEFITS

---

This matter came before the Court on March 8, 2018, on Ms. Haley's request for medical and temporary disability benefits. The legal issue is whether Ms. Haley is likely to prevail at a hearing on the merits in establishing entitlement to these benefits. For the reasons set forth below, the Court holds she is entitled to some, but not all, of the requested benefits.

### History of Claim

Ms. Haley worked for FedEx Express as a handler in Memphis.[1] On November 10, 2016, she injured her left eye when boxes fell, hitting her face. Ms. Haley experienced immediate pain and irritation in her left eye but finished her shift. She returned home and went to bed. When she awoke, she could not see out of her left eye, and her face was red and swollen. She called her team leader, reported the injury, and advised her that she was seeking medical treatment.

FedEx did not initially provide a panel or authorize medical care. Thus, Ms. Haley sought initial treatment from Dr. John Sharpe at the Eye Center at Southern College of Optometry and Dr. Andrew Crothers, an ophthalmologist at VRF Eye Specialty Group. When FedEx eventually accepted her claim in 2017, it authorized treatment with Dr.

---

[1] Ms. Haley testified she currently works for FedEx in Oklahoma City as a customer service agent.

1

Crothers.[2] It also authorized visits for Ms. Haley with Dr. Kenneth Weinberg, whom she selected from a panel, and Dr. James Freeman. The parties took the deposition of Dr. Crothers and introduced it and the following medical proof.

*Medical Treatment*

Ms. Haley saw Dr. Sharpe on two occasions. He diagnosed "traumatic uveitis with apparent hyper-acute conjunctivitis" and possible corneal graft ulceration. He referred her to Eye Specialty Group for immediate evaluation.

Ms. Haley next saw Dr. Crothers. She gave a consistent history of her work injury and her pre-existing corneal transplants in 2013 and 2014. Dr. Crothers diagnosed a central corneal ulcer in the left eye and prescribed various eye drops. At follow-up visits, he diagnosed an epithelial defect and prescribed antibiotic eye drops.[3] [4] Ms. Haley testified she personally paid $442.30 for the eye drops between November 14 and December 27. As of December 28, 2016, Dr. Crothers believed Ms. Haley's epithelial defect was healed, and he advised her that she would eventually require a new corneal transplant in her left eye.

Dr. Crothers treated Ms. Haley through March 15, 2017, when he declined to continue seeing her due a dispute regarding a work-status letter discussed below.

Shortly before Dr. Crothers' final visit with Ms. Haley, FedEx provided her a panel of physicians.[5] It said it offered the panel because Dr. Crothers declined to provide a causation opinion. Ms. Haley selected Dr. Weinberg from the panel and saw him on February 27, 2017. Dr. Weinberg concluded Ms. Haley required a corneal transplant and referred her back to Dr. Crothers. Ms. Haley introduced an email from Sedgwick mentioning Dr. Weinberg released her to light-duty status; however, Dr. Weinberg's record did not mention work status, and the parties did not introduce a work-status note from Dr. Weinberg.[6]

---

[2] The record is unclear as to the date that FedEx accepted Ms. Haley's claim; however, the parties agreed that FedEx has now paid Ms. Haley's medical bills.

[3] During his treatment from November through December 28, 2016, Dr. Crothers either took Ms. Haley off work or provided light-duty restrictions. The parties agreed that eventually, upon accepting compensability of the claim in spring 2017, FedEx paid Ms. Haley temporary disability benefits through December 29, 2016.

[4] Dr. Crothers testified an epithelial defect is a type of infection in the eye.

[5] Ms. Haley testified Sedgwick first provided her a panel over the telephone in late November 2016, and she selected OccuMed. However, she stated the OccuMed physician "could not handle" her condition and referred her back to Dr. Crothers. The parties did not introduce any records into evidence concerning this initial panel or the OccuMed visit.

[6] Sedgwick also sought a medical opinion regarding causation from Dr. Daniel Fuller, Ms. Haley's optometrist. Dr. Fuller unequivocally gave causation. He saw her three days before her injury and stated her corneal grafts were "healthy." He noted, "The grafts were healthy until the work-related injury to the

2

Because Dr. Crothers declined to continue treating Ms. Haley after March 15, FedEx authorized treatment with Dr. James Freeman, with whom it scheduled an appointment for June 2, 2017. When Ms. Haley asked by email on May 22, 2017, about returning to work, Sedgwick responded that FedEx requested she wait until they learned of her work status from her June 2 visit.

On June 2, Dr. Freeman scheduled a left corneal transplant surgery for June 19. In a work-status letter dated June 12, Dr. Freeman stated,

> Until [her surgery], her vision in the left eye is limited which will affect her depth perception, but she has no physical restrictions. She is not restricted from lifting, bending, or otherwise exerting herself . . . She has no restrictions with respect to lifting boxes, operating a computer, or other clerical activities.

Ms. Haley emailed a manager, John Trouy, on June 12 requesting FedEx return her to work until her surgery date. On June 15, Mr. Trouy instructed Ms. Haley via email to stay off work until after her surgery.

Ms. Haley underwent surgery on June 19. The parties agreed FedEx paid her temporary total disability benefits from June 19 to August 15, 2017. Ms. Haley testified Dr. Freeman released her with restrictions on August 15; however, the parties did not introduce Dr. Freeman's office notes into evidence. She returned to work on August 25.

Ms. Haley testified Dr. Freeman recommended another surgery for her left eye, but she requires a new treating physician in Oklahoma City. FedEx asserted it is working on her request.

*Work status dispute between December 30, 2016, and June 18, 2017*

The contested issue is whether Ms. Haley is entitled to temporary disability benefits from December 30, 2016, to June 18, 2017.

Dr. Crothers' records contained two conflicting documents regarding his work-status instructions on December 28. His office note stated, "Patient has permission to go back to work." (Ex. 2 at 110.) An undated work-status note was consistent with his note and indicated, "Per Dr. Crothers, Lawanda Haley was taken off all work restrictions as of 12/28/16 and was able to return to work." (Ex. 5.)

However, a work-status letter electronically signed by Dr. Crothers and dated December 28 indicated Dr. Crothers would return Ms. Haley to work on December 30

left eye." (Ex. 2 at 33.)

with the following restrictions:

> No driving, depth perception is limited, does not need to be around areas where there is a lot of floating debris, no vision out of the left eye, and trouble reading fine print. Ms. Haley must use 4 different eye drops 4 times a day, one of which is just as needed throughout the day. Please allow her to store 2 of the 4 drops in the refrigerator due to the drops requiring a cool place for storage when not being used.

(Ex.4.)

### a. Ms. Haley's position

Ms. Haley testified that, after each visit with Dr. Crothers, she returned to the receptionist's desk to obtain a work-status note. On cross-examination, Ms. Haley testified that on December 28, she told the receptionist she needed a note regarding her restrictions and informed the receptionist her understanding of Dr. Crothers' restrictions. She stated the receptionist "looked at the computer and typed stuff up," and gave her a note containing restrictions. Ms. Haley relied on this note, effective as of December 30, and provided it to FedEx. Ms. Haley testified she returned to work on December 30 and met with her manager, who told her Fed Ex could not accommodate her restrictions.

Ms. Haley denied ever receiving the work-status note from Dr. Crothers' office stating she was able to return to work without restrictions. She further testified she "did not recall" seeing or providing FedEx with work-status notes from Dr. Crothers' office on February 1, February 15, and March 15, all stating she could return to work without restrictions. Ms. Haley admitted that, had FedEx known she was at full-duty work on those dates, it would have returned her to work.

### b. FedEx's position

FedEx relied on Dr. Crothers' testimony. Namely, he testified that, leading up to the December 28 visit, he took Ms. Haley off work because of her epithelial defect in her eye and his concern about her exposure to dust and fumes in that eye. On December 28, Ms. Haley's eye pain and vision improved, and the infection was healed. He stated, "We also had a discussion about returning to work, which I told her I was fine with her doing at this point, as the epithelial defect had resolved." Dr. Crothers further testified,

> I discussed with her the same depth perception limitations that she had. But other than that, and that's not necessarily a restriction, it was more of a warning that, you know, you have to be aware that you aren't going to see as well in that eye as you . . . did before this happened. But there is no real restriction. That was just more of a be careful.

4

He further noted that she could return to work.

Dr. Crothers acknowledged the discrepancy between the work-status note stating she had no restrictions, and the restrictions provided in the work-status letter effective December 30 given to Ms. Haley. However, he denied giving Ms. Haley the work-status letter. Contrary to the work-status letter introduced by Ms. Haley, Dr. Crothers denied he would ever say that she had no vision out of her left eye. He further denied having any reason to state that she had trouble reading fine print. Based on his investigation, Dr. Crothers testified,

> What I was told is that after I had spoken with Ms. Haley in the room and informed her that I felt she was fine to return to work, that she was then given a note by one of my employees who did not ask me my permission to give her a work excuse note.

After Dr. Crothers learned of this issue, he declined to continue treating Ms. Haley after her March 15 visit. Dr. Crothers's records and testimony confirmed that he and other physicians in his office continued to release her to full-duty work on February 1, February 16, and March 15.

## Findings of Fact and Conclusions of Law

Ms. Haley need not prove every element of her claim by a preponderance of the evidence in order to obtain relief at this Expedited Hearing. Instead, she must present sufficient evidence that she is likely to prevail at a hearing on the merits. *See* Tenn. Code Ann. § 50-6-239(d)(1) (2017).

An injured worker is eligible for temporary disability benefits if (1) the worker became disabled due to a compensable injury, (2) there is a causal connection between the injury and the inability to work, and (3) the worker established the duration of the period of disability. *James v. Landair Transp., Inc.*, 2015 TN Wrk. Comp. App. Bd. LEXIS 28, at *16 (Aug. 26, 2015). Temporary partial disability benefits may be awarded when the temporary disability resulting from a work-related injury is not total, and such entitlement exists for the "time, if any, during which the injured employee is able to resume some gainful employment but has not reached maximum recovery." *Williams v. Saturn Corp.*, No. M2004-01215-WC-R3-CV, 2005 Tenn. LEXIS 1032, at *6 (Tenn. Workers' Comp. Panel Nov. 15, 2005).

The issue is whether Ms. Haley is entitled to temporary partial disability benefits from December 30, 2016, to June 18, 2017, and August 21 to August 24, 2017. The Court will address the latter period first.

5

Ms. Haley testified Dr. Freeman released her with restrictions on August 15, 2017. She emailed FedEx on August 21 regarding returning to work, and Mr. Trouy instructed her to return on August 25. She stated she followed his instructions and returned to work on that date. Ms. Haley introduced no medical proof concerning the period of August 21 through August 24 to support her claim for temporary benefits. Further, the factual proof is unclear regarding whether FedEx had a position available for Ms. Haley during this four-day period. The Court holds Ms. Haley did not present sufficient proof to show she is likely to succeed at trial regarding temporary disability benefits between August 21 and August 24, 2017; thus her request is denied at this time.

The issue regarding the former period of December 30, 2016, to June 18, 2017, is less straightforward. To analyze the issue, the Court carefully considered the testimony of Ms. Haley and Dr. Crothers and the extensive documentary evidence. The Court recognizes Ms. Haley's testimony that she understood Dr. Crothers on December 28 to say she needed restrictions beginning December 30. However, the Court finds the proof presented at this stage does not support Ms. Haley's testimony.

Dr. Crothers testified he told Ms. Haley she was cleared to return to work because her infection healed. He testified his only concern with her working before December 28 was her potential work exposure to dust and fumes while her eye remained infected. Significantly, his office note from December 28 states that she had permission to return to work and makes no mention of restrictions. The Court finds this office note consistent with his testimony. Dr. Crothers further testified he would not have said she had no vision in her left eye and that he had no reason to say she could not read fine print. In fact, his office note indicated Ms. Haley's left eye vision was improving. The Court finds Dr. Crothers' testimony persuasive.

The Court further notes Ms. Haley's testimony on cross-examination where she indicated that *she* asked for a restriction note and *she* told the receptionist her "understanding of Dr. Crothers' restrictions." Notably, Ms. Haley also testified she "did not recall" Dr. Crothers' office providing her work-status notes indicating no restrictions on February 1, February 16, and March 15, 2017. Further, she did not inform FedEx she had no restrictions placed at those visits and stated FedEx would have returned her to work, had they known she had no restrictions.

Ms. Haley testified repeatedly that she needed to work during this timeframe; therefore, the Court finds it inconsistent that she alleges she was unclear of her work status at the February and March 2017 visits, yet failed to check with Dr. Crothers for clarification on her ability to work. Based on the foregoing, the Court finds FedEx was unaware Ms. Haley had no restrictions beginning on December 30 from Dr. Crothers and would have provided her a job, had they known. The proof indicates they had no knowledge of her full-duty status because Ms. Haley misinformed them, intentionally or not, on December 30 when she provided a list of restrictions she requested from Dr.

6

Crothers' staff. Thus, the Court finds Ms. Haley did not provide sufficient evidence to show she is likely to prevail at trial regarding entitlement to temporary disability benefits from December 30, 2016, through May 21, 2017.

However, the proof indicates Ms. Haley, through counsel, contacted FedEx on May 22, 2017, requesting to return to work. (Ex. 11.) The email exchange indicated FedEx knew Ms. Haley was at a full-duty work status. Despite her full-duty status, Mr. Trouy instructed Ms. Haley not return to work until she could be seen by Dr. Freeman on June 2 and her work status could be addressed. The proof further indicated that after Dr. Freeman provided his work note indicating no physical restrictions, Ms. Haley contacted FedEx again about returning to work. Mr. Trouy responded that, "we have decided not to bring you back to work until we get an updated work status post-surgery." Ms. Haley's surgery date was June 19. The Court finds FedEx regarded Ms. Haley as disabled between May 22 and June 18. Thus, Ms. Haley is likely to prevail at a hearing on the merits in establishing entitlement to temporary disability benefits for that period, May 22 to June 18, 2017.

*Medical Expenses*

Ms. Haley requested reimbursement for out-of-pocket expenses for the eye drops Dr. Crothers prescribed between November 14 and December 27, 2016, for $442.30. Dr. Crothers, an authorized provider, testified regarding the eye drops he prescribed to treat her left-eye injury. The Court holds Ms. Haley is likely to prevail in establishing her entitlement to reimbursement of her prescription expenses and orders FedEx to reimburse her.

Ms. Haley also requested reimbursement of $600 for new contact lenses. The Court notes Dr. Fuller's record indicated he saw Ms. Haley on November 7, 2016, three days before her work injury, for an exam for new contact lenses. Thus, it appears Ms. Haley needed new contact lenses before this injury. The record is unclear if Ms. Haley received her new contacts before the November 10 injury. The Court further notes the medical records in evidence did not indicate a treating physician ordered new contacts as a result of her work injury. Consequently, Ms. Haley did not come forward with sufficient evidence to demonstrate she is likely to prevail at trial in her request for this medical expense at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. FedEx shall pay Ms. Haley temporary partial disability from May 22 to June 18, 2017, a period of four weeks at the stipulated rate of $237.42, or $949.68.

2. FedEx shall reimburse Ms. Haley her out-of-pocket medical expenses of $442.30.

7

3. The Court denies all remaining requests for medical or temporary disability benefits at this time.

4. This matter is set for a Status Hearing on **May 7, 2018, at 10:30 a.m. Central Time.** The parties must call 855-543-5039 to participate in the hearing.

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov

**ENTERED this the 2nd day of April , 2018.**

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

**APPENDIX**

**Following the Expedited Hearing, the parties stipulated the applicable compensation rate is $237.42.**

Exhibits:
1. Dr. Crothers' deposition
2. Medical Records (collective exhibit)
3. Eye Specialty Group Work Status Notes (collective)
4. December 28 work-status letter
5. December 28 work-status note
6. Medical release
7. Emails between Ms. Haley and FedEx
8. Emails between Ms. Haley and FedEx
9. Reasonable Accommodation request
10. Emails between Ms. Haley and FedEx
11. Emails between Ms. Haley and FedEx

8

12. Emails between Ms. Haley and FedEx
13. Emails between Ms. Haley and FedEx
14. Medical bills
15. Emails between Ms. Haley and FedEx
16. Eye Specialty Group work-status notes

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employee's Brief
5. Employer's position statement
6. Prehearing Order

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 2nd day of April, 2018.

| Name | Via Email | Service sent to: |
| --- | --- | --- |
| Steve Wilson, Esq., Attorney for Employee | X | steve@stevewilsonfirm.com |
| Steve Vescovo, Esq., Attorney for Employer | X | svescovo@lewisthomason.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims

9